**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

UNITED STATES f/u/b/o JACK DANIELS
CONSTRUCTION, INC.,

      Plaintiff,

v.                                                          Case No: 8:12-cv-2921-T-24TBM

LIBERTY MUTUAL INSURANCE
COMPANY and SAFECO INSURANCE
COMPANY OF AMERICA,

      Defendants.

_____

<u>**ORDER**</u>

This cause comes before the Court on Defendants' Motion for Partial Summary Judgment (Dkt. 38), Plaintiff's Motion for Partial Summary Judgment (Dkt. 39), Defendants' Response to Plaintiff's Motion (Dkt. 42), Plaintiff's Response in Opposition to Defendants' Motion (Dkt. 43), and Defendants' Reply (Dkt. 47).

**I.      BACKGROUND**

Plaintiff Jack Daniels Construction, Inc. ("Jack Daniels") brought this action against Defendants Liberty Mutual Insurance Company ("Liberty Mutual") and Safeco Insurance Company of America ("Safeco," together with Liberty Mutual, the "Sureties") on December 27, 2012, seeking payment under the Miller Act, 40 U.S.C. § 3133, for labor supplied and expenditures incurred for the construction of the Joint Intelligence Technical Training Facility at Goodfellow Air Force Base in San Angelo, Texas (the "Project"). Jack Daniels performed concrete work on the Project in its capacity as a sub-subcontractor to Ragghianti Foundations III, LLC ("Ragghianti"). The Sureties are co-sureties on a Payment and Performance Bond issued to Peter R. Brown Construction, Inc. ("Peter Brown"), the prime contractor and principal on the Project.

Jack Daniels alleges that it provided labor and incurred out-of-pocket expenditures for concrete work for the Project, but was never paid for its labor and incurred out-of-pocket expenditures by Peter Brown.

In 2010, Peter Brown entered into a prime contract with the Army Corps of Engineers for the Project (the "Prime Contract"). On August 23, 2010, the Sureties issued Peter Brown a Payment and Performance Bond (No. 6724282) in accordance with the Miller Act, 40 U.S.C. § 3131, naming Peter Brown as principal.[1]

Peter Brown subsequently entered into a subcontract with Ragghianti on January 24, 2011, whereby Ragghianti agreed to provide the building foundation, slab on grade, miscellaneous concrete and site concrete to the Project for the original lump sum of $506,902 (the "Subcontract"). (Dkt. 38-1). The Subcontract incorporated a project schedule for its work. *Id.*

Ragghianti subsequently entered into a sub-subcontract with Jack Daniels on August 18, 2011, to provide labor, materials, equipment, and "anything else necessary and /or required for the final completion" of the work described in the Subcontract (the "Sub-Subcontract"). (Dkt. 38-2). Pursuant to the Sub-Subcontract, Jack Daniels was to furnish "all labor and equipment necessary for the complete installation of the building foundation" on the Project. (Dkt. 38-2, Ex. B, ¶1(a)). Specifically, Jack Daniels was to provide labor to excavate, backfill and finish grade beams and the slab on grade. The Sub-Subcontract did not incorporate the Subcontract, however, the Sub-Subcontract provided that the work was to be completed "per the plans and specifications" contained in the project schedule as referenced in the Subcontract. (Dkt. 38-15 (the "Barlow[2] 2015 Dep."), 173:1, 173:21-22). Prior to preparing the project estimate and signing the Sub-Subcontract,

---

[1] Safeco underwrote the bond, and Liberty Mutual is the parent company of Safeco.

[2] James Barlow was the Project Manager for Jack Daniels, and testified as Jack Daniels' designated corporate representative.

Jack Daniels did not see the terms of Subcontract or the project schedule referenced therein. (Barlow 2015 Dep. at 15:19-16:13).

Jack Daniels began working on the Project in late August 2011. In early September 2011, grade beam work on the Project was halted because several piers were slightly out of tolerance. As a result, Jack Daniels was demobilized. Jack Daniels resumed work on the Project in late October. *See* Dkt. 38-9 (identifying a "Progress Delay from 9/12/11 to 10/24/11"). By November 2011, the Project was behind schedule. The project schedule was revised to allocate additional time for Ragghianti to complete the grade beam work. On or about November 10, 2011, Peter Brown requested that Ragghianti increase its forces and hired a second subcontractor, Dalcan, to work on the grade beams. (Dkt. 38-18, (the "White[3] Dep.) at 45:24-47:7). Dalcan began working on portions of the Project that were within Jack Daniels' scope of work under the Sub-Subcontract, and Jack Daniels continued working on the Project alongside Dalcan. *See* Barlow 2015 Dep. 87:21-25; *see also* (Dkt. 38-16 at 22). Dalcan ceased working on the Project on December 14, 2011. (Ragghianti Case, Dkt. 98-5, (the "Barlow 2013 Dep.") at 88:21-89:11).[4]

On or about December 28, 2011 Jack Daniels executed two Subcontractor Affidavits and Partial Release of Claims. (Dkt. 39, Ex. 5 at 48-54; Dkt. 38-6). The sums reflected on the Subcontractor Affidavits and Partial Release of Claims were $106,528.79 and $22,666.00, respectively. However, Jack Daniels did not receive payments from Peter Brown in the amount of $106,528.79 or $22,666.00.

On December 30, 2011, Jack Daniels provided Peter Brown with an Unconditional Lien Waiver Upon Deposit of Funds Received (the "Waiver"), which was drafted and executed by

---

[3] Barron Steve White testified as Peter Brown's designated corporate representative.

[4] The parties have agreed to rely on "discovery depositions and transcripts" from the Ragghianti Case. (Dkt. 15).

Barlow, in exchange for a payment of $92,623.56. (Dkt. 38-3 at 9[5]; Barlow 2015 Dep. 174:8-17).

The Waiver stated:

> As an obligation of the agreement and in consideration of payment of $92,623.56, comprised of invoices 80607, 80608, 80611, 80613, 80616, the undersigned certifies that 1.) the payment received pursuant to this Unconditional Lien Waiver either has been or will be used to pay for the cost of work which is the subject of the request for payment upon which this payment is made; and 3.) [sic] the undersigned releases and waives any and all rights of lien, claims on bonds, or any and all causes of action whatsoever against the Owner, Peter Brown Construction, Inc., and Ragghianti Foundations by reason of work performed relating to payment amount.

(Dkt. 38-3 at 9). The invoices in the Waiver included the following: (1) 80607 in the amount of $15,977.86 for "Construction Draw – Progress Period – 9/30/11"; (2) 80608 in the amount of $25,901.00 for "November Construction Draw Through 11/30/11"; (3) 80611 in the amount of $9,560.40 for "Change Order #6 – Accelerated Schedule Agreement: Additional Forms and Overtime Labor"; (4) 80613 in the amount of $18,518.30 for "Change Order #4 – Void Form and Pier Cap R & R"; and (5) 80616 in the amount of $22,666.00 for "Progress from December 1st through December 15th 2011." (Dkt. 38-3). Jack Daniels received a payment of $92,623.56 in exchange for the Waiver.

On January 17th, 19th, and 27th, 2012, Jack Daniels issued additional invoices. The invoices included: (1) 80620 in the amount of $30,965.01 for "Additional costs incurred – Equipment rental, Demobilization/Remobilization, Standby Crew, Other Overhead and Administrative Costs. Due to 36 of 97 piers out-of-tolerance" (hereinafter, "CO No. 5")[6]; (2) 80621 in the amount of $35,000.00 for "Additional Costs Incurred resulting from Gradebeam Completion Sequence

---

[5] Jack Daniels objects to the Sureties' inclusion of Dkt. 38-3, and argues that it was never entered as an exhibit in the Ragghianti Case. In response, the Sureties submit that Dkt. 47-1, which is identical to Dkt. 38-3 with the exception of an internal Peter Brown e-mail that attached the documents, was admitted into evidence at the Ragghianti trial as exhibit PX-77.

[6] *See also* Dkt. 38-9 (indicating a "Progress Delay from 9/12/11 to 10/24/11").

Change Made by Peter Brown Construction to accommodate steel erection ahead of slabs" (hereinafter, "CO No. 8"); (3) 80622 in the amount of $31,027.64 for "Additional costs incurred as a result of Peter Brown Construction hiring Dalcan." (hereinafter, "CO No. 9"); (4) 80624 in the amount of $3,300.38 for "C/O # 2.1 – Excess concrete removal" (hereinafter, "CO No. 2.1"); and (5) 80627 in the amount of $21,77.50 for "Scheduled Profits on Incomplete Contract Work – Damages Due to Contract Default" (hereinafter, "Invoice 80627").[7] (Dkt. 38-4; Dkt. 38-13).

Shortly thereafter, on January 26, 2012, Jack Daniels provided Ragghianti a Notice of Contract Termination (the "Notice of Termination"). (Dkt. 38-14). Jack Daniels served a Miller Act notice of nonpayment on the Sureties, Peter Brown, and Ragghianti on January 30, 2012. (Dkt. 38-4; Dkt. 39-1, Ex. A)

On April 27, 2012, Ragghianti brought Miller Act and breach of contract claims against Peter Brown and the Sureties in a separate action (the "Ragghianti Case")[8]. The complaint in the Ragghianti Case alleged that Peter Brown never paid the contract balance owed to Ragghianti and wrongfully terminated Ragghianti. Peter Brown asserted counterclaims for indemnity and for breach of contract.[9] After a seven-day bench trial, the Court found that Peter Brown terminated Ragghianti for default pursuant to the subcontract between Peter Brown and Ragghianti; therefore, Ragghianti was only entitled to unpaid furnished labor and materials, totaling $392,000. However, the Court found in favor of Peter Brown on its counterclaims and awarded Peter Brown $827,457 in damages, which were offset by Ragghianti's damages. Although Ragghianti sought to include

---

[7] CO Nos. 5, 8, and 9 were issued on January 17, 2012, CO No. 2.1 was issued on January 19, 2012, and Invoice number 80627 was issued on January 27, 2012. (Dkt. 38-4).

[8] *U.S. for the Use and Benefit of: Ragghianti Foundations III, LLC v. Peter R. Brown Construction, Inc., Liberty Mutual Insurance Company & Safeco Insurance Company of America*, Case No. 8:12-cv-00942-T-33TBM. The Honorable Virginia M. Hernandez Covington presided over the Ragghianti Case. Jack Daniels was not a party to the Ragghianti Case.

[9] The instant case was stayed pending resolution of the Ragghianti Case. *See* Dkt. 5.

Jack Daniels' damages as a "pass through" claim in the Ragghianti Case, the Court declined to

make a ruling on Jack Daniels' damages. The Court's September 19, 2014 Order in the Ragghianti

Case noted:

> [T]o the extent Ragghianti seeks to obtain damages on behalf of Jack Daniels, this
> Court notes that Jack Daniels has an action currently before the Honorable Susan
> C. Bucklew: Case No. 8:12-cv-2921-T-24TBM. Although Ragghianti seeks to
> include Jack Daniels' 'pass through' claims in its damages claim, which albeit may
> be standard practice, this Court determines that Jack Daniels can adjudicate its own
> claims, and seek its individual damages, by separate action.

*U.S. ex rel. Ragghianti Foundations III, LLC v. Peter R. Brown Constr., Inc.*, 49 F. Supp. 3d 1031,

1047 (M.D. Fla. 2014). The instant case was returned to active status on January 5, 2015. The

Sureties filed their answer on January 22, 2015.[10] (Dkt. 14). The Sureties and Jack Daniels now

each move for partial summary judgment.

## II.      STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as

to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a). The Court must draw all inferences from the evidence in the light most favorable to the non-

movant and resolve all reasonable doubts in that party's favor. *See Porter v. Ray,* 461 F.3d 1315,

1320 (11th Cir. 2006) (citation omitted). The moving party bears the initial burden of showing the

Court, by reference to materials on file, that there are no genuine issues of material fact that should

be decided at trial. *See id.* (citation omitted). When a moving party has discharged its burden, the

non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions,

---

[10] In the Answer the Sureties asserted twelve affirmative defenses: (1) prior breach; (2) payment; (3) setoff; (4) estoppel; (5) failure to mitigate; (6) barment (under the Subcontract); (7) failure to meet conditions precedent; (8) barment (under the Payment and Performance Bond); (9) all defenses available to Peter Brown; (10) release; (11) waiver; and (12) abandonment.

answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial. *See id.* (citation omitted).

## III.    THE SURETIES' MOTION FOR PARTIAL SUMMARY JUDGMENT

The Sureties move for partial summary judgment as to Jack Daniels' claim to the extent that it seeks recovery for lost anticipated unearned profits on work not performed. The Sureties also seek summary judgment as to Jack Daniels' claim for attorneys' fees and for alleged damages with respect to CO Nos. 2.1, 5, 7, 8 and 9.

### A.    <u>Damages for Unearned Profits Under the Miller Act</u>

The Sureties argue that Jack Daniels seeks to recover anticipated unearned lost profits on the basis of Invoice 80627. The Sureties argue that Jack Daniels calculated Invoice 80627 as 10% of the total amount of the change orders for which it now seeks payment, which represents lost profits in the amount of $21,797.50. (Dkt. 38-16 at 2; Dkt. 38-4, Invoice 80627). The Sureties argue that such lost profits are not recoverable under the Miller Act as a matter of law.

In response, Jack Daniels argues that there is no claim for "lost profit" presented in this lawsuit. *See* Dkt. 43 at 6 n.2 ("Jack Daniels has made abundantly clear it is not pursuing lost profits against Sureties); Dkt. 43 at 7.

The Miller Act requires contractors to post bond to ensure payment of persons supplying labor or materials on any government construction contract exceeding $100,000.00. *U.S. ex rel. Capital Computer Grp., LLC v. Gray Ins. Co.*, 453 F. App'x 905, 906 (11th Cir. 2011) (citing 40 U.S.C. § 3131(b)(2)). Because federally owned property is exempt from liens that normally protect laborers and suppliers from non-payment, the Miller Act was enacted to provide a substitute remedy. *United States v. Munsey Trust Co.,* 332 U.S. 234, 241, 108 Ct.Cl. 765, 67 S. Ct. 1599, 91 L.Ed. 2022 (1947); *United States ex rel. Pertun Constr. Co. v. Harvesters Grp., Inc.,* 918 F.2d 915,

917 (11th Cir.1990). The Miller Act is to be liberally construed to carry out its remedial purpose. *Pertun,* 918 F.2d at 917. However, the Miller Act does not establish an unlimited basis for recovery; courts have held that the Miller Act surety is not liable for damages caused by the prime contractor's breach of contract. *Id.*

The Miller Act provides that in the event of a contractor's nonpayment for work or material, "[e]very person that has furnished labor or material in carrying out work provided for in a contract for which a payment bond is furnished under [§] 3131 of this title ... may bring a civil action on the payment bond for the amount unpaid at the time the civil action is brought...." 40 U.S.C. § 3133(b)(1). Four elements must be proven by a plaintiff in order to collect under the Miller Act: (1) that materials were supplied for work in the particular contract at issue; (2) that the supplier is unpaid; (3) that the supplier had a good faith belief that the materials were for the specified work; and (4) that jurisdictional requisites are met. *U.S. f/u/b/o Krupp Steel Prods., Inc. v. Aetna Ins. Co.*, 831 F.2d 978, 979 (11th Cir. 1987). "Because lost profits are not out-of-pocket expenditures for labor and materials, however, they are not within the scope of remedies provided under the Miller Act." *Consolidated Elec. & Mechs., Inc. v. Biggs Gen. Contr., Inc.*, 167 F.3d 432, 436 (8th Cir. 1999); *see also Pertun*, 918 F.2d at 917 (holding that a Miller Act plaintiff can only recover out-of-pocket labor and material costs).

Jack Daniels does not dispute that unearned or anticipated lost profits are not recoverable under the Miller Act as a matter of law. However, Jack Daniels asserts that it does not seek to recover lost profits in this case. The Court accepts Jack Daniels' representation that it is not asserting any claim for "lost profit" in this lawsuit. However, questions of fact remain as to whether any portion of Invoice 80627 represents lost profits. Therefore, to the extent that the Sureties seek

summary judgment as to the nature of the contents of Invoice 80627 or a related claim in the amount of $21,797.50, summary judgment is denied.

### B.   Recovery for CO Nos. 5 and 8

#### 1.   Whether the Sub-Subcontract bars recovery for CO Nos. 5 and 8

The Sureties argue that they are entitled to summary judgment on Change Order No. 5 and Change Order No. 8 because Jack Daniels is not entitled under the Sub-Subcontract to payment of these amounts. The Sub-Subcontract stated "[i]t is understood and agreed that the work of this subcontract may not be performed in a continuous operation and subcontractor includes the cost of multiple mobilizations." (Dkt. 38-2, ¶ 4.a.11). On this basis, the Sureties assert that Jack Daniels' lump sum price under the Sub-Subcontract included the costs of performing work in a non-continuous sequence. The Sureties assert that CO Nos. 5 and 8 seek payment for non-continuous work, demobilization, and remobilization; therefore, costs under CO Nos. 5 and 8 are not recoverable because such costs were included in the Sub-Subcontract's scope of work and part of its lump sum price.

Jack Daniels argues that CO Nos. 5 and 8 are not claims for "multiple mobilizations," but rather they are the result of delay caused by Peter Brown. In support, Jack Daniels points to a draft progress report prepared by the Army Corps of Engineers rating Peter Brown's performance on the Project as unsatisfactory (Dkt. 39-2) and to evidence of Peter Brown's alterations to the project schedule and hiring of Dalcan to show that Peter Brown caused the delay resulting in the costs described in CO Nos. 5 and 8. Jack Daniels argues the Miller Act allows for recovery of costs of labor and material attributable to delay of the prime contractor and thus, CO Nos. 5 and 8's claims are not barred by the Sub-Subcontract.

In *Pertun,* the Eleventh Circuit found that surety liability for out-of-pocket costs of delay

is consistent with both the language and the purpose of the Miller Act. The *Pertun* Court relied on the logic of *United States ex rel. Mariana v. Piracci Constr. Co.,* 405 F. Supp. 904 (D.D.C.1975), which considered similar claims under the Miller Act. In *Mariana,* the court held that a Miller Act surety is liable to a subcontractor for increased costs for labor or material furnished "'in the prosecution of the work provided for in [the] contract,'" provided that the costs were actually incurred due to delay not attributable to the subcontractor. *Mariana,* 405 F. Supp. at 906. Other courts have found that a surety's obligations are determined based on whether the claims fall within the language of the Miller Act, rather than the terms of the underlying contract. *See Mai Steel Serv., Inc. v. Blake Const. Co.*, 981 F.2d 414, 417 (9th Cir. 1992) (agreeing with Fifth Circuit finding that a "subcontractor's ability to recover did not hinge ... on ... the terms of the underlying contract [but] depended entirely on whether the claim fell within 'the language of [the Miller Act]'"); *see also Pertun*, 918 F.2d at 918.

Here, Jack Daniels argues that the costs reflected in CO Nos. 5 and 8[11] resulted from delays caused by Peter Brown and not attributable to Jack Daniels. As the Miller Act permits recovery for "*all* costs of labor and material supplied in performing its contractual obligations ...including those portions caused by delay," *Pertun,* 918 F.2d at 918 (emphasis in original), and because material questions of fact remain regarding whether the costs included in CO Nos. 5 and 8 were incurred as the result of Peter Brown's delay, the Sureties are not entitled to summary judgment on CO Nos. 5 and 8 because the Sub-Subcontract bars recovery.

---

[11] CO No. 5 includes costs for equipment rental, demobilization/remobilization, a standby crew, and other administrative costs. (Dkt. 38-4; Dkt. 38-16 at 18). CO No. 8 includes costs for "Additional Costs Incurred resulting from Gradebeam Completion Sequence Change Made by Peter Brown Construction to accommodate steel erection ahead of slabs." (Dkt. 38-4; Dkt. 38-16 at 13).

### 2.      Whether CO Nos. 5 and 8 represent costs actually expended

Alternatively, the Sureties argue that Jack Daniels cannot show that CO Nos. 5 and 8 include costs "actually expended" as required under the Miller Act. Regarding CO No. 5's costs for "Standby Crew," the Sureties argue that Jack Daniels has not submitted any certified payrolls showing that it actually paid its crew. With respect to CO No. 8, the Sureties argue the requests for payments contained therein are merely estimations. Therefore, the Sureties assert they are entitled to summary judgment on CO Nos. 5 and 8 because Jack Daniels cannot prove it actually expended such costs.

Jack Daniels asserts that the amounts at issue were found to be costs expended in the Ragghianti Case and have already been litigated. Additionally, Jack Daniels argues the Sub-Subcontract did not require certified payrolls for standby crew.

The Miller Act limits a subcontractor's recovery to "costs actually expended in furnishing the labor or material in the prosecution of the work provided for in the contract and attributable to the delay." *United States v. Millers Mut. Fire Ins. Co.*, 942 F.2d 946, 952 (5th Cir. 1991). A subcontractor "must be able to demonstrate with reasonable certainty and specificity the increased costs resulting from [a] delay... particularly ... with respect to the claim for home office overhead and general and administrative expenses." *Id.* at 952, n.15 (citations omitted).

Here, Jack Daniels points to its Change Order requests and backup, including the delay log appended to CO No. 5 (Dkt. 38-16 at 19), Jens Baker's Expert Report (Dkt. 39-3), Barlow's testimony that change orders reflected "actual" man-hours and equipment, (Dkt. 40-6 at 104-119, 121), and various excerpts of testimony from the Ragghianti Case to demonstrate the costs in CO Nos. 5 and 8 were expended. The Court finds that the evidence submitted by Jack Daniels sufficiently demonstrates that there is a genuine issue for trial with regard to the question of

whether CO Nos. 5 and 8 reflect costs actually expended. Accordingly, the Sureties are not entitled to summary judgment as to CO Nos. 5 and 8 based on the argument that they are not for costs actually expended.

       **C.**       **Release of CO Nos. 7, 8, 9 and 2.1 pursuant to the Waiver**

The Sureties argue that by drafting and signing the Waiver, Jack Daniels released any claim on the bond with respect to CO Nos. 7, 8, 9, and 2.1. The Sureties assert that Jack Daniels had furnished the labor and materials claimed in CO Nos. 7, 8, 9, and 2.1, and was aware of its purported entitlement to those change orders prior to executing the Waiver. The Waiver stated that Jack Daniels released and waived "any and all rights of lien, claims on bonds, or any and all causes of action whatsoever against the Owner, Peter Brown Construction, Inc., and Ragghianti Foundations by reason of work performed relating to the payment amount." (Dkt. 38-3 at 9). Accordingly, by drafting and signing the Waiver, the Sureties assert that Jack Daniels represented, by omission, that it had no other claims against the bond during the time period covered by the Waiver.

Jack Daniels argues that the Waiver does not contain any express renunciation of its rights to payment under the bond with respect to CO Nos. 7, 8, 9, and 2.1. Additionally, Jack Daniels argues that none of the invoices for which Jack Daniels seeks payment under the Miller Act are included in the Waiver.

"The right to sue on a surety bond is a right created by statute, and in the absence of a novation or clear expression to the contrary, the contention that there has been a waiver or release of that right must fail." *Trane Co., a div. of Am. Standard v. Whitehurst-Lassen Const. Co.*, 881 F.2d 996, 1002 (11th Cir. 1989) (citing *U.S. for Use of Friedrich Refrigerators, Inc. v. Forrester*, 441 F.2d 779, 782 (5th Cir. 1971)). Here, the Waiver does not contain a clear expression releasing Jack Daniels' claim under the Miller Act. Additionally, the Waiver does not mention CO Nos. 7,

8, 9, and 2.1, or any of the underlying invoices related thereto. Nor does the Waiver state any relevant time period related to its coverage. Therefore, genuine issues of material fact remain with regard to the Waiver. Accordingly, summary judgment is not appropriate on this issue.

**D.      Attorneys' Fees**

Finally, the Sureties argue that Jack Daniels is not entitled to attorneys' fees because the Miller Act does not provide for prevailing party attorneys' fees and Jack Daniels has not identified a prevailing party attorneys' fees provision in any agreement relevant to this matter. The Sureties point to *F.D. Rich Co., Inc. v. United States for the use of Industrial Lumber Comp., Inc.*, 417 U.S. 116 (1974), for the proposition that federal law governs the award of attorneys' fees with respect to a Miller Act claim.

Jack Daniels argues that state law governs the award of attorneys' fees and it is entitled to attorneys' fees under Texas law pursuant to TX Civ. Prac. & Rem. § 38.001. Jack Daniels points to *Boyd Callan, Inc. v. U.S. for Use of Steves Indus., Inc.*, 328 F.2d 505, 511-12 (5th Cir. 1964), to support its argument that in suits under the Miller Act, the recovery of interest, costs, and attorneys' fees is governed by state law.

In *F.D. Rich Co*, the Supreme Court held that Miller Act remedies are a matter of federal law and that courts should apply federal law to decide claims for attorneys' fees. *F.D. Rich Co.,* 417 U.S. 116 at 127-28. The Miller Act does not itself provide for attorneys' fees. *Krupp Steel Products, Inc.* 831 F.2d at 983. In *F.D. Rich Co.*, the Supreme Court found that in the absence of statutory or contractual guidance, the commercial aspect of Miller Act cases should not allow an exception to the American Rule, which provides that parties must pay their own legal costs. *Id.* (citing *F.D. Rich Co.,* 417 U.S. 116 at 128-31).Therefore, *F.D. Rich Co.*, which was decided after *Boyd*, overruled *Boyd* and is controlling law with respect to the entitlement to attorneys' fees in a

Miller Act action. *See U.S. ex rel. Garrett v. Midwest Constr. Co.,* 619 F.2d 349, 352 (5th Cir.1980) (finding that state law claims for attorneys' fees cannot be asserted in a Miller Act action on the basis of the Supreme Court's ruling in *F.D. Rich Co.*)[12]

Although a surety must pay attorney fees when there is an agreement between a subcontractor and the claimant providing for such fees, *United States ex rel. Krupp Steel Prods. v. Aetna Ins. Co.,* 923 F.2d 1521, 1527 (11th Cir.1991), Jack Daniels has not identified any such agreement or attorneys' fees provision that is applicable here. Accordingly, the Sureties are entitled to summary judgment on Jack Daniels' claim for attorneys' fees. *See Garrett,* 619 F.2d at 352.

## IV.  JACK DANIELS' MOTION FOR PARTIAL SUMMARY JUDGMENT

### A.  Delay Damages and Contract Damages

Jack Daniels argues it is entitled to summary judgment on its claims for delay damages because they were fully litigated in the Ragghianti Case. In response, the Sureties argue that the Court's ruling in the Ragghianti Case did not assess or rule on the amount of Jack Daniels' damages or its entitlement thereto.

As discussed above, material questions of fact remain regarding whether Jack Daniels incurred expenses as the result of Peter Brown's delay. Moreover, the ruling in the Ragghianti Case did not include a determination of Jack Daniels' delay damages, as the Court specifically declined to adjudicate Jack Daniels' claims or damages. *See Ragghianti Foundations III, LLC*, 49 F. Supp. 3d at 1047. As such, the Court's ruling in the Ragghianti Case does not warrant summary judgment on Jack Daniels' delay damages in this case.

---

[12] In *Bonner v. City of Prichard,* the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981. 661 F.2d 1206, 1207 (11th Cir.1981) (en banc).

Jack Daniels also argues it is entitled to summary judgment as to its contract damages because there is "no legitimate dispute of contract damages." (Dkt. 39 at 15). However, the Sureties dispute the legitimacy of Jack Daniels' contract damages on factual bases and as a matter of law.

As discussed above, the Sureties are not entitled to summary judgment on the basis that the Sub-Subcontract bars Jack Daniels' recovery of damages as a matter of law. However, material questions of fact remain regarding the calculation of Jack Daniels' contract damages, including whether its expenses were based on mere estimations. As such, summary judgment is not appropriate as to Jack Daniels' claims for contract damages.

## B. **The Sureties' Affirmative Defenses**

### 1. **Prior Breach and Jack Daniels' Miller Act Claim**

In the Sureties' first affirmative defense of prior breach, the Sureties allege that Jack Daniels and Ragghianti "materially breached the relevant Subcontract by its failure to provide sufficient properly skilled workers, adequate supervision or material of proper quality; its failure to prosecute the work according to the project schedules, and, for performing work that was not in compliance with the contract documents, among other things." (Dkt. 14 at 3). The Sureties assert that such prior breach precludes Jack Daniels' recovery on affirmative claims and entitles Peter Brown to "costs, damages, expenses and attorneys' fees it incurred to correct and complete [Ragghianti]'s work." (Dkt. 14 at 3).

Jack Daniels argues that it is entitled to summary judgment on the affirmative defense of prior breach because the Sureties are not parties to the Sub-Subcontract or the Subcontract with Ragghianti; therefore, the Sureties and Jack Daniels are not privies. Additionally, Jack Daniels argues that Ragghianti's breach would not excuse the Sureties from paying amounts due to Jack

Daniels under the Miller Act, because a surety's liability on a Miller Act bond must be at least coextensive with the obligations imposed by the Act.

The Sureties argue that the parties' privity is irrelevant because the Sureties stand in the shoes of their principal and are entitled to assert all the defenses that its principal may assert.

The Court agrees that a Miller Act surety stands in the shoes of its principal and is entitled to assert all the defenses that its principal may assert. *See Moore Bros. Co. v. Brown & Root, Inc.*, 207 F.3d 717, 728 (4th Cir. 2000) (finding that a Miller Act surety stands in the shoes of its principal and to the extent that the principal can assert a defense pursuant to the relevant contract, the surety can do so as well); *see also U.S. for the Use and Benefit of Hussman Corporation v. U.S. Fidelity and Deposit Company of Maryland,* 999 F.Supp.734 (D.N.J.1998) (surety entitled to raise recoupment claim in defense of Miller Act claim). However, in the instant case, the Sureties' principal, Peter Brown, was a not party to any contract with Jack Daniels. Additionally, the Sub-Subcontract did not incorporate the Sub-Contract. As such, Peter Brown cannot raise a defense of breach of contract against Jack Daniels where no such contract existed. Therefore, as Peter Brown and Jack Daniels are not privies, the Sureties, standing in the shoes of Peter Brown, cannot assert prior breach of contract as a defense. Accordingly, Jack Daniels is entitled to summary judgment on the Sureties' affirmative defense of prior breach of contract.

### 2.    Payment

In the Sureties' second affirmative defense of payment, they assert that Peter Brown made payments to Ragghianti for all work properly performed and that such payments constitute the full compensation to which Ragghianti and its subcontractor Jack Daniels are entitled for the scope of work they properly performed.

Jack Daniels argues that the Sureties' payment defense is irrelevant and asserts that "[t]here simply is no sum for which Jack Daniels (or [Ragghianti]) was paid in Jack Daniels' payment claims." (Dkt. 39 at 17).

In response, the Sureties argue that whether Peter Brown paid Jack Daniels for labor, services, and equipment is disputed by the record. The Sureties argue that Peter Brown paid a portion of the amount that Jack Daniels is now seeking as damages in a joint check for $92,623.56 that was issued to Ragghianti and Jack Daniels on December 30, 2011.[13]

The parties vigorously dispute whether Peter Brown's payment of $92,623.56 included payment for claims in the instant case. Thus, the factual dispute regarding whether certain sums claimed in this action were included in Peter Brown's joint check to Ragghianti and Jack Daniels for $92,623.56 clearly precludes summary judgment on this issue. Accordingly, Jack Daniels is not entitled to summary judgment as to the Sureties' second affirmative defense of payment.

### 3.    Setoff

The Sureties' third affirmative defense of setoff states:

> Any damages incurred by [Jack Daniels] should be set-off and are exceeded by Peter R. Brown's costs to correct [Ragghianti] and [Jack Daniels'] defective work, complete [Ragghianti's] scope of work under the Subcontract, and for Peter R. Brown's general conditions costs, liquidated damages, and attorneys' fees and costs incurred in the completion and correction of [Ragghianti's] work. Liberty Mutual asserts that it is entitled to a set-off against, or reduction of, any damages demanded in the Complaint for all amounts paid or payable by or on behalf of any other person or entity responsible for [Ragghianti's] alleged damages (such material suppliers or subcontractors of[Ragghianti]), including, without limitation, Jack Daniels[].

(Dkt. 14 at 3-4).

Jack Daniels argues that the Sureties' third affirmative defense of setoff fails as a matter of law in the absence of contractual privity. In support of its argument, Jack Daniels relies on the

---

[13] Jack Daniels does not dispute that it received payment from Peter Brown in the amount of $92,623.56.

Ninth Circuit case of *Martin Steel Constructions, Inc. v. Avanti Construction, Inc.*, 750 F.2d 759 (9th Cir. 1984), which found that "[c]ases allowing a defense of set-off are limited to those in which the plaintiff is a subcontractor or materialman of the general contractor and thus is in direct contractual relations with the counterclaimant." *Id*. at 762.

The Sureties argue that they may assert a defense of recoupment or setoff in the absence of privity. The Sureties point to *U.S. ex rel. Tennessee Valley Marble Holding Co. v. Grunley Construction,* 433 F .Supp. 2d 104 (D.D.C.2006), to support their proposition that a surety may assert a setoff defense in the absence of privity.[14]  The *Grunley* court found that even in the absence of privity, a party asserting a Miller Act claim is not entitled to more payment than that to which it is entitled under the relevant contract, and therefore, a general contractor may assert a defense of recoupment. The *Grunley* court discussed the differences between "setoff" and "recoupment," noting that modern rules of pleading have diminished the importance of distinguishing between these two defenses. On this basis, the Sureties suggest that the Court should interpret its affirmative defense of "setoff" synonymously with a claim for "recoupment."

As the Supreme Court has explained "[t]he right of setoff ... allows entities that owe each other money to apply their mutual debts against each other, thereby avoiding 'the absurdity of making A pay B when B owes A.'" *Citizens Bank of Maryland v. Strumpf,* 516 U.S. 16, 18, 116 S. Ct. 286, 133 L.Ed.2d 258 (1995). However, here, there are no mutual debts or extrinsic transactions. These circumstances are further compounded by lack of privity between Peter Brown and Jack Daniels. As such, the Sureties have not provided sufficient support showing that they are entitled to assert an affirmative defense of setoff to Jack Daniels' Miller Act claim. Accordingly,

---

[14]  A circuit split exists between the Ninth and First Circuits on this issue. The Eleventh Circuit has not specifically addressed this issue.

Jack Daniels is entitled to summary judgment on this affirmative defense.

### 4.    Estoppel

In their fourth affirmative defense of estoppel, the Sureties assert that Jack Daniels is estopped from asserting its claims where the damages allegedly suffered by Ragghianti are the proximate result of Jack Daniels' own actions or omissions.

Jack Daniels argues that the Sureties have not established estoppel because the Sureties cannot show the required element of detrimental reliance. Thus, Jack Daniels argues it is entitled to summary judgment on this issue.

The Sureties argue that they need not show that they detrimentally relied on an act of Jack Daniels because they are entitled to assert the defenses of Peter Brown. Furthermore, the Sureties assert that the record contains disputed issues of fact regarding whether Peter Brown detrimentally relied on the actions and statements made by Jack Daniels in terminating Dalcan. In support, the Sureties point to their verified Amended Answer to Interrogatory No. 12, which claims that Jack Daniels, shortly before it abandoned the project, induced Peter Brown to terminate Dalcan.

The Court finds that there are genuine issues of material fact that preclude summary judgment as to the Sureties' affirmative defense of estoppel. Therefore, summary judgment is not appropriate as to the Sureties' affirmative defense of estoppel.

### 5.    Mitigation

Jack Daniels argues that the Sureties' fifth affirmative defense of mitigation is not a defense to a subsubcontractor's Miller Act payment bond claim.

The Sureties contend that Jack Daniels failed to obtain Ragghianti's approval for requests for payment for changed work and delays in advance of performance. As a result, the Sureties argue that Jack Daniels expended money claimed in Change Orders Nos. 5, 8 and 9 in excess of

amounts it was required to incur under the Sub-Subcontact. The Sureties argue that the Sub-Subcontract defines and limits those instances where Jack Daniels is entitled to additional costs outside of its scope of work.

Jack Daniels does not dispute that it did not receive prior approval from Ragghianti prior to incurring the expenses in Change Orders Nos. 5, 8 and 9. Therefore, to the extent that the Sureties have provided evidence that Jack Daniels failed to obtain prior approval from Ragghianti for change orders prior to the work, the Court finds that there is a genuine issue of material fact that precludes summary judgment as to the Sureties' affirmative defense of mitigation.

### 6.      Release and Waiver

Jack Daniels argues that the Sureties' affirmative defenses as to the Waiver and other releases signed by Jack Daniels overlook the facf/u that these documents were limited in scope to specific payment applications and were conditioned upon payments never actually received by Jack Daniels. As discussed above, issues of material fact remain regarding the coverage of the Waiver. Thus, summary judgment is not appropriate on this issue.

### C.      Indemnification

Finally, Jack Daniels raises several arguments challenging the Sureties' entitlement to indemnification pursuant to the indemnification provisions contained in the Subcontractor Affidavit and Partial Release of Liens executed by Jack Daniels. (Dkt. 39, Ex. 5 at 48-54; Dkt. 38-6). The Sureties respond that they do not make a claim for indemnification in this action. (Dkt. 42 at 17 n. 19).

The Court accepts the Sureties' representation that they will not assert a claim for indemnification. Accordingly, Jack Daniels arguments regarding the Sureties' ability to recover

on the basis of the indemnity provisions contained in the Subcontractor Affidavits and Partial Release of Liens are moot.

## V.    CONCLUSION

On the basis of the forgoing, it is **ORDERED AND ADJUDGED** that:

1.  Defendants' Motion for Partial Summary Judgment (Dkt. 38) is **GRANTED IN PART and DENIED IN PART**. Defendants' Motion for Partial Summary Judgment **GRANTED** to the extent that Jack Daniels may not assert claims for attorneys' fees. Defendants' Motion for Partial Summary Judgment is **DENIED** as to the remainder of Defendants' motion.

2.  Plaintiff's Motion for Partial Summary Judgment (Dkt. 39) is **GRANTED IN PART and DENIED IN PART**. Plaintiff's Motion for Summary Judgment is **GRANTED** to the extent that Defendants may not assert their first affirmative defense of prior breach of contract and their third affirmative defense of setoff. The Plaintiff's Motion for Summary Judgment is **DENIED** as to the remainder of Plaintiff's motion.

**DONE AND ORDERED** at Tampa, Florida, this 28th day of December, 2015.

*Susan C. Bucklew*

SUSAN C. BUCKLEW
United States District Judge

Copies To: Counsel of Record and Parties

21